## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TT OF CONYERS, INC. d/b/a CONYERS NISSAN, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | CLASS ACTION COMPLAINT |
| | JURY TRIAL DEMANDED |
| v. | |
| BIOLAB INC., and KIK CUSTOM PRODUCTS INC. d/b/a KIK CONSUMER PRODUCTS, | |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff TT of Conyers, Inc. d/b/a Conyers Nissan ("Plaintiff" or "Conyers Nissan") by and through undersigned counsel, on behalf of itself and all other persons and entities similarly situated, brings suit against Defendant BioLab Inc. ("BioLab") and KIK Custom Products, Inc. d/b/a KIK Consumer Products ("KIK") (collectively "Defendants"), and alleges upon information and belief and based on the investigation to date of its counsel, as follows:

1

## NATURE OF THE CASE

1.      On September 29, 2024 a fire broke out at the KIK BioLab facility in Conyers, Georgia ("Conyers Facility"). The fire was initially extinguished but later reignited causing the building's sprinkler system to go off. The water from the sprinkler system sprayed onto water reactive chemicals triggering an explosive chemical reaction.

2.      Massive amounts of smoke billowed into the air, containing toxic chemicals such as chlorine, hydrochloric acid, hydrogen cyanide, hydrogen bromide and phosgene.

3.      Rockdale County officials issued an evacuation order, requiring residents of Conyers, Georgia to evacuate immediately. All residents of Rockdale County were ordered to shelter in place.

4.      The shelter in place order was extended through the evening on Monday, September 30, 2024, and all businesses in Rockdale County were advised to close.

5.      On Tuesday, October 1, 2024, Rockdale County authorities issued another shelter in place order lasting until October 4, 2024, advising all residents to shelter in place between the hours of 7 p.m. and 7 a.m.

## PARTIES

6.     Plaintiff TT of Conyers, Inc. d/b/a Conyers Nissan ("Plaintiff" or "Conyers Nissan") is a Georgia corporation with its principal place of business at 505 South Flagler Dr., Ste. 1400, West Palm Beach, Florida 33401. TT of Conyers, Inc. owns and operates Conyers Nissan, a car dealership, located at 1420 Iris Dr. SW, Conyers, GA 30094.

7.     Defendant BioLab, Inc. ("BioLab") is a Delaware corporation with its principal place of business at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5. BioLab is licensed to do business in the State of Georgia and may be served through its registered agent for service of process, CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046. BioLab is a wholly owned subsidiary of Defendant KIK.

8.     BioLab is engaged in the business of manufacturing and/or supplying swimming pool and spa water care chemicals under product names that include BioGuard, SpaGaurd, Natural Chemistry, SeaKlear, AquaPill, Coral Seas, ProGuard, and Pro Series.

9.     Defendant KIK Custom Products, Inc. d/b/a KIK Consumer Products, Inc. ("KIK") is a Delaware corporation with its principal place of business located at 101 MacIntosh Blvd., Concord, Ontario, Canada L4K4R5. KIK is one of North America's largest independent manufacturers of consumer products.

10.    KIK has locations in the State of Georgia including the KIK Center of Excellence – Atlanta located at 1725 North Brown Road, Lawrenceville, Georgia 30043; KIK-Hampton located at 75 Pine View Drive, Hampton, Georgia 30228; and KIK BioLab – Conyers located at 1700 Old Covington Hwy., Conyers, Georgia 30012.

11.    At all relevant times, upon information and belief, KIK and/or BioLab owned and operated the Conyers, Georgia chemical plant located at 1700 Old Covington Hwy., Conyers, Georgia 30012 ("Conyers Facility").

12.    Upon information and belief, BioLab has consistently held itself out as conducting business affairs as a conduit for KIK in connection with the ownership and operation of their chemical enterprise. Additionally, BioLab and KIK constituted a joint venture in connection with their chemical enterprise inasmuch as they agreed to undertake ownership and operation of the enterprise jointly for the purpose of sharing associated profits and losses, and in connection therewith, each contributed their respective skills, property or resources in exercising control or a right of control over the facilities.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are citizens of different states. Plaintiff

is incorporated in Georgia with its principal place of business in Florida. Defendants are incorporated in Delaware and have their principal places of business in Canada.

14.     This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interests and costs. There are more than 100 Class Members, and Plaintiff and many Class Members and Defendants are citizens of different states.

15.     Defendants conduct substantial business in this Judicial District, including the operation of the chemical plant in this Judicial District, and have sufficient contacts with this Judicial District or otherwise intentionally avail themselves of the laws and markets of this Judicial District, so as to sustain this Court's jurisdiction over Defendants.

16.     Venue lies in this Judicial District, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District. In addition, Defendants do business and/or transact business in this Judicial District, and therefore, are subject to personal jurisdiction in this Judicial District and reside here for venue purposes.

## FACTUAL ALLEGATIONS

**A.    Background**

17.    BioLab has operated a chemical manufacturing facility in Conyers, Rockdale County, Georgia ("Conyers Facility") since 1973. The Conyers Facility receives, blends, and packages Trichloroisocyanuric Acid ("TCCA") into finished consumer products.

18.    TCCA is a chlorinating agent often used for sanitizing swimming pools and hot tubs. It is a white solid substance manufactured at the BioLab facility and available as a powder, compacted tablets, and granules.

19.    In large bodies of water such as pools, TCCA breaks down slowly to release hypochlorous acid (HC1O), which kills bacteria, algae and other microorganisms.

20.    However, when TCCA comes in contact with a small amount of water, it causes a chemical reaction which generates heat and decomposes the TCCA. This process produces chlorine gas and explosive nitrogen trichloride.

21.    Chlorine is a toxic substance immediately dangerous to life or health if inhaled.

22.    The Conyers Facility can contain hundreds of thousands of pounds of TCCA on any given day. These are packaged in 2750 pound "super sacks" and stored on the warehouse floors.

23.     BioLab has a history of fires and toxic chemical releases at its Conyers Facility.

24.     In 2004, the warehouse of the Conyers Facility caught fire, injuring 28 people. The fire produced a toxic chlorine plume that affected residents within 50 miles of the Conyers Facility, and authorities closed Interstate 20. Residents within a 1.5-mile radius of the facility were evacuated. The fire was caused by an explosion at the Conyers Plant fueled by 250,000 pounds of dry chlorine pellets. The explosion and fire resulted in a $7 million settlement paid to those impacted by the fire.

25.     In 2016, a fire ignited in a storage shed at the Conyers Facility. The fire was only noticed and reported because a nearby resident smelled smoke and chemicals and called the authorities. The fire was fueled by reactions from chlorine pellets contained in the storage shed. Residents within a 1-mile radius of the facility were evacuated.

26.     In 2020, a water line leaked in the Conyers Facility, flooding part of the facility and reacting with the TCCA used in the facility. The reaction produced dangerous fumes and a plume of hazardous chemicals. Following the incident, chlorine levels in the air at nearby business property measured 12 times the permissible exposure limit set by the federal government. Nearby businesses were evacuated, and the highway was closed. The leak and resulting fumes cost an estimated $1,007,000 in property damage.

**B.     The Explosion and Smoke Plume**

27.     On Sunday September 29, 2024, around 5:30 a.m., a fire broke out on the roof of the BioLab Conyers Facility.

28.     The fire was initially extinguished but reignited around 12 p.m., triggering the Conyers Facility's sprinkler system, which caused water to mix with a water-reactive chemical, creating a large plume of smoke and chemicals.

29.     The fire was brought under control by 4 p.m. and the facility's roof and walls subsequently collapsed.

30.     The smoke and chemical plume was so large that it could be seen from at least 30 miles away.

31.     At 10:45 a.m. Rockdale County authorities issued an emergency alert advising all churches from Rockbridge to the Northside County Line to cancel services or disperse immediately if services were already in session.

32.     Around 1:10 p.m. the Rockdale County authorities issued an evacuation alert asking residents living between Sigman Road and Interstate 20 near the Conyers Facility to evacuate immediately. More than 17,000 residents were displaced.

33.     Around the same time, Rockdale County authorities announced the closing of Interstate 20 in both directions between Salem Road and Turner Hill, an 8-mile stretch of the highway. All southbound traffic on Hi-Roc between Irwin

Bridge and Highway 138 was shut down, and all traffic from Highway 138 to Interstate 20 from Turner Hill Road to Salem Road was shut down.

34.     The Rockdale County authorities issued a shelter in place order for all residents of Rockdale County between 7:45 p.m. and midnight.

35.     At 3:22 a.m. on Monday, September 30, 2024, the Rockdale County authorities extended the shelter in place and advised all businesses to close operations until the shelter in place order was lifted.

36.     The shelter in place order affected approximately 93,000 residents and 2,200 businesses.[1]

37.     Interstate 20 was reopened in both directions around 7 a.m. on Monday morning. However, many roads in Conyers, Georgia remained closed.

38.     The shelter in place order was lifted around 8 p.m. on Monday, September 30, 2024.

39.     Due to the weather, the smoke plume continued to move throughout Rockdale County on Monday night and the Rockdale County authorities issued an alert at 6:35 a.m. on Tuesday, October 1, 2024, asking residents to shelter in place if the plume moves over their vicinity or if there is a strong odor of chlorine.

---

[1] https://data.census.gov/profile/Rockdale_County,_Georgia?g=050XX00US13247 (last accessed Oct. 2, 2024).

40.     At 4:23 p.m. on Tuesday, October 1, 2024, Rockdale County authorities issued another shelter in place order, recommending that residents shelter in place from 7 p.m. through 7 a.m. beginning Tuesday night through Friday, October 4, 2024.

41.     All Rockdale County government offices are closed through October 4, 2024.

## C.    Plaintiff Allegations

42.     Conyers Nissan is a car dealership located at 1420 Iris Dr. SW, Conyers, GA 30094, less than 3-miles away from the Conyers Facility where the explosion occurred.

43.     Conyers Nissan has a sales department and a service department. Its sales department is open 7 days a week. Its business hours are 9:00 a.m. to 8:00 p.m. Monday through Friday, 9:00 a.m. to 7:00 p.m. on Saturday, and 12:00 p.m. to 6:00 p.m., on Sunday.  Conyers Nissan's service hours are 7:00 a.m. to 6:00 p.m. Monday through Friday and 7:00 a.m. to 4:00 p.m. on Saturday.

44.     Due to the fire and subsequent chemical smoke plume, and consistent with shelter in place orders issued by the Rockdale County authorities, Conyers Nissan was forced to close its sales and service departments on Sunday, September 29, 2024, Monday, September 30, 2024, and Tuesday, October 1, 2024. As such, Conyers Nissan lost income from its sales and service departments.

45.     Due to the fire and subsequent chemical smoke plume, and consistent with the shelter in place order issued on October 1, 2024 advising residents to shelter in place starting at 7 p.m. through Friday, October 4, 2024, Conyers Nissan's business continues to be impacted.

46.     As a result of the fire and subsequent chemical smoke plume, and consistent with the shelter in place order issued due to the toxic smoke plume originating from Defendants' Conyers Facility, Conyers Nissan has suffered substantial lost income, sales and profits.

## CLASS ALLEGATIONS

47.     Plaintiff brings this action on behalf of itself and on behalf of all others similarly situated as Class Members pursuant to Fed. R. Civ. P. 23.

48.     Plaintiff seeks to represent a Class as defined as follows:

> All entities and businesses transacting business in Georgia, that incurred damages as a result of the September 29, 2024 BioLab Conyers Facility fire.

Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants and its legal representatives, assigns and successors of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

49.    *Numerosity*. The Class is composed of thousands of entities and businesses doing business in Georgia, including in Rockdale County, Georgia and surrounding communities, the joinder of whom in one action is impractical. While the exact number of Class Members is unknown at this time, the proposed Class is believed to be in the thousands as there are over 2,000 entities and businesses in Rockdale County alone.[2] Class Members may be notified through objective means, including objective data available to the Parties regarding the entities or businesses in the affected areas. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

50.    *Commonality*. Questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting individual members of the Class. These common legal and factual issues include, but are not limited to:

  a.  Whether Defendants negligently maintained, controlled, oversaw, inspected, or monitored the BioLab Conyers Facility;

  b.  Whether Defendants negligently manufactured, maintained, controlled, oversaw, inspected, or monitored hazardous chemicals;

---

[2] https://data.census.gov/profile/Rockdale_County,_Georgia?g=050XX00US13247 (last visited Oct. 2, 2024).

c.  Whether Defendants owed a duty of care to Plaintiff and the Class;

d.  Whether Defendants breached their duty of care to Plaintiff and the Class;

e.  Whether Defendants created a nuisance;

f.  Whether Defendants' actions constitute negligence per se;

g.  Whether Defendants' actions constitute trespass;

h.  Whether Defendants' misconduct, negligence, and recklessness and breaches of legal duties owned to entities and businesses of the community resulted in damages to Plaintiff and Class Members;

i.  Whether Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or entire want of care which would raise the presumption of conscious indifference to consequences such that punitive or exemplary damages should be awarded.

51.  *Typicality*. Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise as a consequence of the September 29, 2024 BioLab Conyers Facility fire and smoke plume which resulted in evacuation and shelter-in-place orders and advisories. Plaintiff brings claims based upon the same legal theories and under the same law as similarly situated business and entity Class Members.

52.     Plaintiff and the other Class Members sustained damages as a direct and proximate result of the same wrongful acts or omissions of Defendants.

53.     Plaintiff's damages are akin to those of Class Members, and Plaintiff seeks relief consistent with the relief of Class Members.

54.     *Adequate Representation*. Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class Members.

55.     *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and courts in the surrounding areas of Georgia would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management

difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

56.    Plaintiff and the Putative Class repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 55 as if fully set forth here.

57.    Defendants actively participated in the manufacture, processing, and storage of hazardous chemicals.

58.    Each Defendant owed Plaintiff and Class Members a duty to operate their facility and hazardous chemical operations in a manner which would not cause Plaintiff and Class Members injury or harm.

59.    Defendants owed Plaintiff and Class Members a duty to maintain, monitor, oversee, inspect, and control the Conyers Facility in Rockdale, Georgia to avoid the release of hazardous chemicals into the surrounding community.

60.    Defendants owed Plaintiffs and Class Members a duty to use reasonable care in the manufacture and storage of hazardous chemicals at their Conyers Facility.

61.    Defendants each negligently breached these duties, and others, by negligently manufacturing, maintaining, controlling, overseeing, inspecting, and monitoring the hazardous chemicals.

15

62.   Defendants breached these duties by allowing the hazardous chemicals to burn or otherwise escape from the Conyers Facility into the surrounding community.

63.   Defendants each owed Plaintiff and Class Members a duty of reasonable care and preventing unreasonable harm commensurate with the risk of operating a chemical facility.

64.   Because of the likelihood of contamination of neighboring areas, exposure to their occupants, and disruption to business activities, Defendants each had a duty to operate their facility in a manner which would prevent it from exploding, and from contaminating the air in nearby communities.

65.   Defendants each negligently breached their duty of reasonable care and preventing unreasonable harm by, among other things:

   a. Emitting dangerous volumes of harmful chemicals into the environment such that normal business activities were required to be suspended;

   b. Failing to employ safe methods to adequately control their chemical facility and ensure explosions, ignitions, and runaway chemical reactions did not occur;

   c. Failing to ensure the adequacy and operation of sprinklers at their Conyers Facility;

d. Failing to ensure that chemicals were stored in a manner that would prevent them from coming into contact with water;

e. Failing to utilize corporate policies and procedures that would prevent ignitions, explosions, and runaway chemical reactions from happening;

f. Failing to store hazardous materials in such a way as to avoid their contact with populated areas; and

g. Failing to have or implement a responsible emergency response plans that would minimize and contain the release of toxic chemicals into the environment.

66.   As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have and will continue to suffer from lost profits.

67.   Defendants, through their knowledge of each other's operations relating to their Conyers Facility, and their financial and other interests and incentives in each other's operation of their Conyers Facility, consciously and deliberately pursued a common plan and design to conduct reckless activities and are therefore jointly liable to Plaintiff and Class Members.

68.   Defendants conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

69.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment in its favor and against Defendants for damages in an amount as determined by the jury and which will be proven at trial.

## COUNT II
## NUISANCE

70.     Plaintiff and the Putative Class repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 55 as if fully set forth here.

71.     Defendants knew or should have known of the risk of fire at the Conyers Facility.

72.     Defendants knew or should have known of the risk that a fire at the Conyers Facility would result in the release of toxic substances into the surrounding neighborhood and communities.

73.     Defendants knew or should have known of the risk that a fire at the Conyers Facility would result in the release of toxic and harmful smoke into the surrounding neighborhood and communities.

74.     Defendants knew or should have known of the risk that the release of toxic and harmful smoke into the surrounding neighborhood and communities would result in business activities being shut down for extended periods of time.

75.     Defendants' uncontrolled discharge of toxic and harmful substances and smoke has substantially interfered with Plaintiff and other Class Members' ability to operate their businesses which constitutes a private nuisance.

76.     The nuisance described above continues to this day and has adversely impacted the businesses and profits of Plaintiff and other Class Members.

77.     The release of toxic chemicals is an unreasonable interference with the rights common to the general public to enjoy, peacefully and unimpeded, the air, soil, and water in the surrounding community.

78.     Defendants unreasonable use of their property and their unreasonable ignition and explosion of their Conyers Facility has unreasonably interfered with the rights of Plaintiff and Class Members to operate their businesses, causing them to inconvenience and lost profits.

79.     Plaintiff and Class Members have sustained harm special and distinct from harm suffered by the general public, as Plaintiff and Class Members have lost business opportunity and profits.

80.     Defendants improper manufacture, storage, discharge, and ignition of highly caustic and combustible chemicals constitutes a private nuisance. This nuisance has directly and proximately caused Plaintiff to presently suffer, and continue suffering in the future, inconvenience and lost profits.

81.    As a direct and proximate result of Defendants' actions, Plaintiff and Class Members have and will continue to suffer from lost profits.

82.    Defendants, through their knowledge of each other's operations relating to their Conyers Facility, and their financial and other interests and incentives in each other's operation of their Conyers Facility, consciously and deliberately pursued a common plan and design to conduct reckless activities and are therefore jointly liable to Plaintiff and Class Members.

83.    Defendants conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

84.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment in its favor and against Defendants for damages in an amount as determined by the jury and which will be proven at trial.

## COUNT III
## PUNITIVE DAMAGES

85.    Plaintiff and the Putative Class repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 55 as if fully set forth here.

86.    As outlined in the factual allegations herein, Defendants have now repeatedly engaged in a course and pattern of conduct that was indifferent to the

safety of the community surrounding the BioLab Conyers Facility, including Plaintiff and the Putative Class.

87.     Defendants have failed to address the causes of previous incidents and have allowed another chemical fire to occur without adequately updating needed safety protocols, fire protections and other emergencey measures. Said failures represent bad faith, recklessness, and wanton and willful conduct on part of the Defendants.

88.     Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or entire want of care which would raise the presumption of conscious indifference to consequences of said actions.

89.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment in its favor and against Defendants for damages in an amount of punitive or exemplary damages as determined by the jury and which will be proven at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

a.  For an Order certifying the Class, as defined above, and appointing Plaintiff and its Counsel to represent the Class certified by the Court;

21

b.  For damages, including compensatory, punitive, and exemplary damages, in an amount to be determined at trial;

c.  For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

d.  For prejudgment interest on all amounts awarded;

e.  For injunctive and declaratory relief, as allowed by law; and

f.  Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated:          October 4, 2024                    Respectfully submitted,

*/s/ Christopher L. Coffin*
Christopher L. Coffin
Georgia Bar No. 173079
**Coffin Law, LLC**
1311 Ave. Ponce de Leon, Suite 504
San Juan, Puerto Rico 00907
Tel: (787) 961-9988
ccoffin@coffinlawllc.com

/s/ M. Brandon Smith
M. Brandon Smith
Georgia Bar No. 141418
**Childers, Schlueter & Smith, LLC**
1932 N. Druid Hills Road, Suite 100
Atlanta, GA 30319
Tel: (404) 419-9500
bsmith@cssfirm.com

M. Palmer Lambert*
(LA Bar No. 33228)
Tracy L. Turner*
(OH Bar No. 0069927)
Remy A. Higgins*
(LA Bar No. 33890)
**PENDLEY, BAUDIN & COFFIN, LLC**
3525 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Tel: (504) 355-0086
plambert@pbclawfirm.com
tturner@pbclawfirm.com
rhiggins@pbclawfirm.com

*Pro Hac Vice forthcoming*.

**Counsel for Plaintiff and the Proposed Class**